Kevin R. McCarthy, VSB No. 14273
McCarthy & White, PLLC
1751 Pinnacle Drive, Suite 1115
McLean, VA 22102
703-770-9261
krm@mccarthywhite.com
Attorneys for Trustee

UNITED STATES BANKRUPTCY COURTM
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| In re: | \* | |
| | \* | |
| MEGAN SKUBAL | \* | Case No. 13-14627-BFK |
| | \* | (Chapter 7) |
| Debtor(s). | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FIRST AND FINAL APPLICATION FOR ATTORNEY'S FEES

McCarthy & White, PLLC, the duly appointed attorney for the Chapter 7 Trustee, makes application for first and final compensation for legal services in this case. The Applicant seeks compensation in the amount of $34,500 in fees, as more particularly set forth in Exhibit A, which is attached hereto and made a part hereof.[1]

The Court authorized the retention of the Applicant as attorney for the Trustee on February 4, 2014. This is the Applicant's first and final fee application. The hourly billing rate during the period covered by this Application for Kevin R. McCarthy, the Applicant's primary attorney who rendered legal services to the Trustee, was $400 until October 1, 2014, then $425 until October 1, 2016, and then $450. These rates are well within the reasonable attorney's fees standards of the Laffey Matrix used by the U.S. Attorney's Office for the District of Columbia in fee-shifting cases.

---

[1] Exhibit A shows fees in excess of $57,500. The Applicant has reduced its fee application by about $23,000 in order to allow a nearly 100% distribution to creditors and to obviate the sale of additional North Carolina real property owned by the Debtor and her father for the purpose of paying the Trustee's legal fees.

The earliest state bar admission date for Kevin R. McCarthy was 1978 (Virginia). The total hours billed are set forth at the end of the attached Exhibit A.

This was a case with substantial assets and substantial scheduled unsecured claims. The substantial assets were two pieces of North Carolina real estate that the Debtor and her father Thomas Skubal co-owned of record. The substantial scheduled unsecured claims totaled $73,192.11 and included claims originally held by Citi Platinum Card for $25,818.06 and a claim held by ACS Education Services for $46,171.47.

The Adversary Proceeding. The Applicant analyzed the Trustee's rights under Sections 363(h) and 544 of the Bankruptcy Code, researched applicable North Carolina law, and prepared and filed a complaint against Mr. Skubal in Adversary Proceeding No. 14-01124 to establish the estate's interests in the real estate and to obtain the Court's authorization to sell the real estate. That Adversary Proceeding was settled with Court approval. Under the settlement, the Trustee was authorized to sell the two pieces of North Carolina real estate "to pay all allowed claims and allowed and estimated allowable administrative expenses in full." Order Approving Compromise entered on February 5, 2015 (D.E. 53). The Applicant prepared the settlement agreement between the Trustee and Mr. Skubal and the settlement notice, motion, and proposed order.

The Rule 3004 Dispute. As mentioned above, the scheduled unsecured claims totaled $73,192.11 and included claims originally held by Citi Platinum Card for $25,818.06 and a claim held by ACS Education Services for $46,171.47. However, by the end of the 90-day claims filing deadline, only two creditors had filed claims totaling $569.71.

With substantial assets available but minimal claims, the Applicant researched Federal

Rule of Bankruptcy 3004 in order to determine the appropriateness of the Trustee filing claims during the 30-day period after expiration of the 90-day claims filing period. This research included the rule itself, case law decided under the rule, and articles in the National Association of Bankruptcy Trustees Journal. The Applicant also consulted with other panel Chapter 7 trustees. The Applicant concluded that the Trustee could file claims under Rule 3004 so long as they were based on documentation in addition to the schedules. The Trustee assembled documentation supporting the scheduled claim originally held by Citi Platinum for $25,818.06 and the scheduled claim held by ACS Education Services for $46,171.47.

On May 15, 2014—the day before the 30-day filing period afforded trustees under Rule 3004 expired—the Trustee filed Claims 3 (ACS) and 4 (Citi) and informed Mr. Jones of the Office of the U.S. Trustee by e-mail that he had done so. The Trustee stated that had filed them "because they were the only ones for which I had direct information from the debtor concerning amount, address, and balance due" and pointed out that the "information also comports with the schedules." In the same e-mail the Trustee: 1) cited Section 501(c), Rule 3004, <u>Yoon v. VanCleef</u>, and <u>In re Middle Plantation of Williamsburg</u> as authority; 2) informed Mr. Jones that he had sent a letter to all scheduled creditors with the claims notice attached; 3) informed Mr. Jones that he had he faxed "the two creditors asking them to file a claim by today if they wanted to file a proof of claim"; 4) informed Mr. Jones that he had spoken with ACS "but their policy is just to suspend collection"; and 5) informed Mr. Jones that he had "sought input from the other panel trustees" and that the "ones I heard back from seemed to be of the view that what I proposed to do was OK under the statute and rule." The Trustee summarized his pre-filing efforts as follows: "So I did everything I know how to be even-handed with all the creditors and

3

file solely based on information from the debtor as opposed to the schedules." The Trustee characterized his motivation for filing the claims as follows: "There are valuable assets available here that I would like to administer for the benefit of the creditors and administrative expenses including myself as trustee and my firm as attorney."

The U.S. Trustee nonetheless objected to both claims, and Mr. Skubal objected to the credit card claim. The U.S. Trustee argued that Rule 3004 did not authorize a chapter 7 trustee to file a claim unless it benefited the Debtor, although no such limiting language appears in the rule. Mr. Skubal made a similar argument and also challenged whether the credit card claim was sufficiently documented under Rule 3001(c). Both raised the statute of limitations as a defense to the credit card claim. The Applicant prepared a detailed twenty-four page response to the objections, arguing as follows in the Summary of Argument:

> Section 501(c) and Federal Rule of Bankruptcy Procedure are unambiguous. They specifically authorize trustees to file claims on behalf of creditors. Nothing in the statute or the rule limits this authority to situations where a debtor is benefited. Resort to legislative history to place such a gloss on an unambiguous statute is unwarranted. Even if trustees could file claims only or primarily to benefit a debtor, Claim 3, the student loan claim, benefits the debtor. The Trustee investigated the claims appropriately before he filed them, and they were filed for a proper purpose—to pay valid claims. It cannot be the law that the filing of valid claims under Rule 3004 and Section 501(c) for the express purpose of paying them is rendered improper solely because a trustee is also motivated by a desire to receive compensation based on their payment. That result follows from the plain language of Section 326(a). The profit motive is built into the commission scheme enacted by Congress to incentivize trustees to distribute money to creditors. The more distributed, the greater the commission. In any case, valid claims cannot be disallowed regardless of the purpose for which they were filed by a trustee. This is particularly true for Claim 4, the credit card claim, because that claimant has now amended the original claim filed by the Trustee. Creditors should be paid from property of the estate ahead of debtors and their relatives. The filed claims, as amended, are sufficiently documented, are valid, and were scheduled as undisputed. No evidentiary hearing is needed because no testimony could add to the existing record, which supports the allowability of the claims. Even if there were technical deficiencies, they are not grounds for disallowance in these circumstances. The statute of limitations is an affirmative defense that the objectors cannot prove. The Trustee has clear standing to defend claim objections.

The Court held a hearing on the claim objections on April 7, 2015. The Court denied the U.S. Trustee's objection to the student loan claim (D.E. 72). In a separate order the Court sustained Mr. Skubal's objection to the credit card claim on the ground that it was time-barred but found that the credit card claim had been sufficiently documented (D.E. 73).

<u>The Lot Sale Dispute</u>. The Trustee then proceeded with efforts to sell one of the two North Carolina properties that were the subject of his settlement with Mr. Skubal in Adversary Proceeding 14-01124. Under the settlement, the Trustee could sell both Firethorn Lot 102 and 226 Old Meg's Lane, Boone, NC 28607226 Old Meg's Lane to pay all allowed claims including allowed administrative expenses, but had to sell the lot first. Sale of the lot proved difficult. In an effort to allay Mr. Skubal's concerns about the sale price, the Trustee moved from realtor to realtor to realtor, eventually selecting the same realtor with whom Mr. Skubal had listed the lot (in violation of the settlement agreement). Also to allay Mr. Skubal's concerns about the sale price, the Trustee listed the lot at $199,000, a valuation believed to be reasonable by Mr. Skubal, before periodically reducing the list price in order to attract an offer. After the lot was marketed in this fashion for over a year, it finally drew an offer that matured into a sales contract for $45,000 subject to Court approval.

The Applicant prepared a sale notice, motion, and proposed order to sell the lot for $45,000. Mr. Skubal opposed the sale motion, questioning whether the lot should be sold to pay claims and administrative expenses and whether the sale price was reasonable. To support his argument that the lot should not be sold to pay claims and administrative expenses, Mr. Skubal paid the student loan claim in full, a total of $45,780.83. The Applicant prepared a response to the objection, pointing out that the Trustee had to sell the lot in order to be able to pay the

remaining claims and any administrative expenses. To demonstrate the reasonableness of the sale price, the Applicant's response also detailed the sales process employed by the Trustee and his realtor.

The Applicant represented the Trustee at a contested hearing on the sale motion during which Mr. Skubal testified that the price was too low but failed to identify any specific deficiencies in the realtor's marketing efforts. At the Trustee's suggestion, however, he agreed to offer $1000 more than the sales contract price of $45,000. The Court orally approved the higher bid ($46,000) at the hearing. Following the hearing, the Applicant prepared a proposed sale order, which the Court entered on December 22, 2016. Following closing, the Applicant prepared a report of sale.

Summary of Results. All of the funds collected by the Trustee in this case are the result of the Applicant's services. Absent those services, the student loan claim allowed over the U.S. Trustee's objection would not yet be paid ($45,780.83) and the other two allowed pre-petition claims would not be paid at all. That aside, it was reasonable for the Applicant to defend the Trustee's filing of the credit card claim, a claim scheduled as undisputed that was disallowed as time-barred because the transferee was unable to obtain from the transferor a written contract between the Debtor and the transferor. The Applicant believes that its briefing concerning Rule 3004 articulated a correct and fully supported view of the rule.

On March 7, 2017 the Trustee had $41,298.07 on hand, all of it attributable to the Applicant's services. Absent those services, this would have been a no-asset case.

The Applicant certifies that fees are not being sought for work that is the responsibility of the Trustee. A printout of the Trustee's time incurred in this case is attached as Exhibit B hereto.

6

The Applicant further states that it has not shared or agreed to share any such compensation or reimbursement of expenses requested pursuant to Section 503(b)(2) or Section 503(b)(4) of the Bankruptcy Code in a manner contrary to the provisions of Section 504 of the Bankruptcy Code.

Wherefore, the Applicant requests the Court to enter an Order approving this Application for $34,500 in attorney's fees.

Respectfully submitted,

/s/ Kevin R. McCarthy
Kevin R. McCarthy, VSB No. 14273
McCarthy & White, PLLC
1751 Pinnacle Drive – Suite 1115
McLean, VA  22102
(703) 770-9261
krm@mccarthywhite.com
Attorneys for Trustee

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May, 2017 I served a copy of the foregoing through the court's ecf system on all registered ecf participants who have appeared in this case.

/s/ Kevin R. McCarthy
Kevin R. McCarthy
Attorney for the Trustee